# Exhibit A

**STATE OF MINNESOTA**                                      **DISTRICT COURT**

**COUNTY OF CARVER**                                  **FIRST JUDICIAL DISTRICT**

Case Type:  Contract

Comerica Bank & Trust, N.A. as Personal          Court File No.: _____
Representative of the Estate of Prince Rogers          Judge: _____
Nelson,

               Plaintiff,                                      **Summons**

    vs.

Steven Parke,

           Defendant.

---

THIS SUMMONS IS DIRECTED TO:    Steven Parke
                                   322 S. Jefferson Street
                                   Middletown, MD 21769-8025

1. **YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you.  The Plaintiff's Complaint against you is attached to this Summons.  Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS**.  You must give or mail to the person who signed this Summons **a written response** called an Answer within 21 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this Summons located at:

        Lora M. Friedemann
        FREDRIKSON & BYRON, P.A.
        200 South 6th Street, Suite 4000
        Minneapolis, MN  55402-1425
        Telephone: (612) 492-7000

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: March 4, 2020

Respectfully submitted,

By: _____

Lora M. Friedemann
FREDRIKSON & BYRON, P.A.
200 South 6th Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone: (612) 492-7000
lfriedemann@fredlaw.com

*Attorneys for Plaintiff*

69140177

2

# Exhibit B

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF CARVER                                 FIRST JUDICIAL DISTRICT

---

Comerica Bank & Trust, N.A. as Personal              Case Type:  Contract
Representative of the Estate of Prince Rogers
Nelson,                                              Case No. _____

                    Plaintiff,

          v.                                         **COMPLAINT**

Steven Parke,

                    Defendant.

---

        Plaintiff Comerica Bank & Trust, N.A. as Personal Representative of the Estate of Prince

Rogers Nelson ("Prince Estate"), by and through its attorneys, Fredrikson & Byron P.A., 200

South Sixth Street, Suite 4000, Minneapolis, MN 55402, hereby brings this Complaint against

Defendant Steven Parke.

                                    <u>**PARTIES**</u>

        1.      Prince Rogers Nelson, the international superstar and renowned artist known as

"Prince," died on April 21, 2016, at Paisley Park in Chanhassen, Minnesota.  A probate matter

for the estate of Prince Rogers Nelson (the "Prince Estate") is pending in Carver County,

Minnesota, Court File No. 10-PR-16-46.  Plaintiff Comerica Bank & Trust, N.A. is the Personal

Representative of the Prince Estate.

        2.      Defendant Steven Parke is a photographer and artist who worked for Prince and

Prince-owned entities from time to time for approximately thirteen years, starting in 1988.  On

information and belief, Parke resides in Baltimore, Maryland.

3.     At the beginning of his employment, Parke signed a General Employee Privacy Agreement ("Privacy Agreement") with PRN Productions, Inc., an entity owned by Prince. A copy of the Privacy Agreement is attached as **Exhibit A**.

4.     PRN Productions dissolved in 1998 and Prince, the sole shareholder, became the legal successor.  When Prince died on April 21, 2016, his Estate became the successor-in-interest to the legal rights held by Prince with the legal right to enforce the Privacy Agreement.

5.     Although the Privacy Agreement expressly prohibits Parke from writing a book or disclosing non-public information about Prince, Parke did both those things shortly after Prince's tragic death.

<u>**JURISDICTION AND VENUE**</u>

6.     This is an action for breach of contract.

7.     Venue is proper under Minn. Stat. § 542.09 because the cause of action arose in Carver County and it is the venue designated by Plaintiff.

8.     Defendant Parke is subject to specific personal jurisdiction in Minnesota because the work Parke performed for Prince and Prince-related entities was largely performed in Minnesota, and the Prince Estate's claims in this action arise in large part from Parke's work in Minnesota.  Among other things, this lawsuit concerns photographs Parke took in Minnesota and confidential information Parke obtained in Minnesota.

<u>**FACTS**</u>

9.     Parke signed the Privacy Agreement on April 13, 1988 when he began employment with PRN Productions, Inc.

10.     In the Privacy Agreement, Parke agreed that all information he obtained through his work for Prince was confidential and could not be used or disclosed, either directly or

indirectly, to anyone other than Prince and the officers of PRN Productions. Specifically,

Paragraph 1 of the Privacy Agreement provides:

> You further acknowledge and agree that the privacy of Prince is highly valued
> and that all efforts are made to maintain confidentiality with respect to all
> information and other material of every kind concerning Prince, except such
> information and material publicly and intentionally disclosed by us or our
> affiliates. Accordingly, you hereby agree that you shall not at any time use or
> disclose, directly or indirectly, to anyone other than Prince or the officers of our
> company … any information acquired by you in the course of or in connection
> with your employment by us or in any way relating to Prince.

11.     Parke also agreed that he would not write a book about Prince or give interviews.

The relevant provision, entitled "NO RIGHT TO GIVE INTERVIEWS, WRITE BOOKS OR

ARTICLES," provides that Parke "shall not, without our prior written consent, give any

interviews (whether written or oral), [or] write or prepare or assist in the preparation of any

books or articles" that in any manner concern Prince.

12.     On or around April 7, 2017, Parke published a book entitled *Picturing Prince: An

Intimate Portrait.* In the book, Parke reveals confidential information about Prince.

13.     Parke also has given interviews where he revealed non-public information about

Prince.

14.     Parke breached the Privacy Agreement when he revealed confidential information

about Prince, wrote a book about Prince, and gave interviews about Prince.

15.     The Prince Estate is entitled to liquidated damages of $500,000 because of

Parke's breaches.   Specifically, the Privacy Agreement provides:

> [I]f you shall breach any promise in this agreement, in addition to any and all
> other legal or equitable rights or remedies available to us, we shall be entitled to
> injunctive relief to stop you from doing any prohibited acts. Such remedies shall
> include, without limitation, the right to prevent the disclosure or circulation of any
> materials described in this agreement before such materials are published.
> **Further, if you shall breach any promise in this agreement in addition to any
> other rights or remedies we may have, you shall be required to pay us the**

3

**sum of Five Hundred Thousand Dollars ($500,000.00).**  You and we acknowledge that it would be extremely difficult and impracticable to fix the amount of damages to us and Prince as a result of the loss of privacy we and Prince shall suffer and that the sum of Five Hundred Thousand Dollars ($500,000.00) is a reasonable and fair amount of damages to compensate us and Prince for our and his such loss of privacy as a result of your such breach .... (Emphasis added.)

16.     In addition, the Privacy Agreement allows PRN Productions (now the Estate) to "recover any and all monies or other benefits whatsoever received by you or on your behalf from any and all sources in connection with any use, disclosure or circulation by you of any  material so described in this agreement and that any such monies or other benefits so received by you or on your behalf shall be held, in trust, by you or on your behalf for immediate payment over to us."

17.     When confronted regarding the Privacy Agreement and his conduct, Parke claimed that he "forgot" about the Privacy Agreement.

18.     Parke is continuing to breach the Privacy Agreement despite the Estate's demands that he cease doing so.

### COUNT ONE
### Breach of Contract

19.     The Prince Estate incorporates the above allegations.

20.     Defendant Parke entered into the Privacy Agreement with PRN Productions, Inc.

21.     The Privacy Agreement is a valid and binding contract.

22.     The Prince Estate is the successor-in-interest to PRN Productions, Inc. and has the legal right to enforce the Privacy Agreement.

23.     The Privacy Agreement prohibits Parke from disclosing any information about Prince and specifically prohibits writing books and giving interviews.

24.     Parke breached the Privacy Agreement by disclosing confidential information, writing a book about Prince, and giving interviews revealing confidential information about Prince. Each of these actions is an independent breach.

25.     The Privacy Agreement also establishes that PRN Productions (now the Estate) owns all photographs taken pursuant to the Agreement and prohibits Parke from removing or copying them. Parke breached the Privacy Agreement by removing and copying photographs subject to the Privacy Agreement.

26.     The Prince Estate is entitled to damages because of Parke's breach of the Privacy Agreement in an amount to be proven at trial. At a minimum, the Price Estate is entitled to liquidated damages of $500,000 and all money Parke obtained for sales of the book *Picturing Prince: An Intimate Portrait*. All such funds shall be held in trust for the Prince Estate as provided under the Privacy Agreement.

27.     The Prince Estate is also entitled to a permanent injunction preventing Parke from committing further breaches of the Privacy Agreement and requiring that Parke return all Estate-owned property to the Prince Estate.

### COUNT TWO
### Injunctive Relief

28.     The Prince Estate incorporates the above allegations.

29.     The Prince Estate is entitled to a permanent injunction preventing Parke and all of those acting in concert with him from further disclosure or distribution of confidential information concerning Prince, including but not limited to the book *Picturing Prince: An Intimate Portrait.*

### REQUEST FOR RELIEF

WHEREFORE, the Prince Estate respectfully requests that the Court:

1.    Enter an Order in favor of the Prince Estate on its claims against Parke;

2.    Award damages to the Prince Estate in an amount in excess of $50,000 to be proven at trial;

3.    Enter an Order requiring that Parke return all photographs taken under the Privacy Agreement to the Prince Estate;

4.    Enter a permanent injunction preventing Parke and all of those acting in concert with him from further disclosure or distribution of confidential information concerning Prince and/or photographs of Prince taken under the Privacy Agreement, including but not limited to the book *Picturing Prince:  An Intimate Portrait*; and

5.    Enter an Order for any such other and further relief as allowed by law or determined to be just and appropriate.

Dated:  March 4, 2020

Lora M. Friedemann (#0259615)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
lfriedemann@fredlaw.com

*Attorneys for Plaintiff*

6

## ACKNOWLEDGMENT

Plaintiffs/Appellants acknowledge that costs, disbursements, and reasonable attorneys' fees may be awarded pursuant to Minn. Stat. § 549.211, to the parties against whom allegations in this pleading are asserted.

Dated:  March 4, 2020

Lora M. Friedemann (#0259615)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
lfriedemann@fredlaw.com

*Attorneys for Plaintiff*

69376575

# EXHIBIT A

GENERAL EMPLOYEE PRIVACY AGREEMENT

PRN PRODUCTIONS, INC.
c/o Moultrie Accountancy Corp.
4950 Wilshire Boulevard
Los Angeles, California  90010

6 -13 , 1988

Dear ____:

In consideration of our agreeing to employ you in
connection with the activities of the performing artist
professionally known as "Prince", it being to your benefit in
your career that we so employ you, and for other good and valuable
consideration, receipt of which is hereby acknowl- edged, you
hereby acknowledge and agree that it is essential to our employment
of you that you agree as follows:

1.   NO INTEREST IN NAME; PROMISE NOT TO DISCLOSE PRIVATE
INFORMATION.

You hereby acknowledge and agree that you do not have
any interest whatsoever in the name "Prince" or "Prince and the
Revolution" or in any similar name.  You further acknowledge and
agree that the privacy of Prince is highly valued and that all
efforts are made to maintain confidentiality with respect to all
information and other material of every kind concerning Prince,
except such information or material publicly and intentionally
disclosed by us or our affiliates.  Accordingly, you hereby agree
that you shall not at any time use or disclose, directly or
indirectly, to anyone other than to Prince or the officers of our
company any of the following described information:  any informa-
tion acquired by you in the course of or in connection with your
employment by us or in any way relating to Prince, any concert
tour, or us, and all such information shall be deemed to be
confidential, private, secret and sensitive and shall be kept
confidential and secret unless we advise you differently in
writing.

2.   NO INTEREST IN PROPERTY; NO RIGHT TO RECORD,
PHOTOGRAPH, OR TAPE.

Any and all information described in paragraph 1 above,
including, without limitation, any and all pictures, recordings,
records, documents or other information relating to any entertain-
ment services, or other services, performed by Prince, or by any
person, firm or corporation doing business with or in any way
related to us or Prince, whether prepared by you or otherwise
coming into your possession, is and shall remain our sole and

SN002AJT.1-2                    1                    03/13/87

exclusive property and shall not be removed or copied by you
without our prior written consent. In addition, you shall not
photograph, tape, film, or otherwise record (a) any likenesses or
activities of Prince, (b) any of Prince's concert performances,
or rehearsals therefor, or (c) any other activities concerning
Prince, or any person, firm or corporation in any way related to
or doing business with us or Prince.

### 3.   NO RIGHT TO GIVE INTERVIEWS, WRITE BOOKS OR ARTICLES.

    Further, you shall not, without our prior written
consent, give any interviews (whether written or oral), write or
prepare or assist in the preparation of any books or articles, or
make any derogatory remarks, which interviews, books, articles or
remarks concern or discuss us or Prince, nor shall you do any act
that may harm or discredit or cause to lower in esteem our
reputation or public image or the reputation or public image of
Prince, or any person, firm or corporation in any way related to
or doing business with us or Prince.

### 4.   INJURY TO PRINCE; LEGAL REMEDIES.

    (a)  You acknowledge and agree that due to the particu-
lar nature of the entertainment industry any disclosure or
circulation by you of any of the information or material described
in this agreement will cause severe and irreparable harm to us
and/or Prince. You also acknowledge that any disclosure or
circulation by you of any of the information or material described
in this agreement will deprive us and/or Prince of the right to
use such information or material. Therefore, it would be important
and necessary to prevent you from disclosing or circulating such
information or material. You also understand that it may be
necessary to have a court order you to stop from doing such acts.

    (b)  Therefore, you expressly agree that if you shall
breach any promise in this agreement, in addition to any and all
other legal or equitable rights or remedies available to us, we
shall be entitled to injunctive relief to stop you from doing any
prohibited acts. Such remedies shall include, without limitation,
the right to prevent the disclosure or circulation of any materials
described in this agreement before such materials are published.
Further, if you shall breach any promise in this agreement, in
addition to any other rights or remedies we may have, you shall
be required to pay to us the sum of Five Hundred Thousand Dollars
($500,000.00). You and we acknowledge that it would be extremely
difficult and impracticable to fix the amount of damages to us
and Prince as a result of the loss of privacy we and Prince shall
suffer and that the sum of Five Hundred Thousand Dollars
($500,000.00) is a reasonable and fair amount of damages to
compensate us and Prince for our and his such loss of privacy as
a result of your such breach, and that such a sum bears a
reasonable relationship to the actual damages we and Prince will
suffer from such circumstances. Finally, you expressly agree

that, in addition to any other rights or remedies we may have, we
shall be entitled to recover any and all monies or other benefits
whatsoever received by you or on your behalf from any and all
sources in connection with any use, disclosure or circulation by
you of any material so described in this agreement and that any
such monies or other benefits so received by you or on your behalf
shall be held, in trust, by you or on your behalf for immediate
payment over to us.

Very truly yours,

PRN PRODUCTIONS, INC.

By _~Fredd. Moultrie_
Fred Moultrie

AGREED AND ACCEPTED:

STEVEN PARKE

By _____     Date  4/25/88

Employed By _PRN Productions, INC_

Position _ARTIST_

Social Security # _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_

Starting Date _4/13/88_